**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United States of America,

        Plaintiff,

v.

Timothy Kenneth Gray, Jr.,

        Defendant.

**Criminal No. 13-256 (DSD/SER)**

**REPORT AND**
**RECOMMENDATION**

---

    Andrew S. Dunne, Esq., United States Attorney's Office–Minneapolis, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff.

    Mark D. Larsen, Esq., Lindquist & Vennum PLLP, 80 South Eighth Street, Suite 4200, Minneapolis, Minnesota 55402, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

    The above-captioned case comes before the undersigned on Defendant Timothy Kenneth Gray, Jr.'s ("Gray") Motion to Suppress Evidence Derived from Search and Seizure ("Mot. to Suppress Evidence") [Doc. No. 17]. This matter has been referred for the resolution of the issues raised in Gray's Motion to Suppress Evidence pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends denying the Motion to Suppress Evidence.

## I.    BACKGROUND

    On October 23, 2013, the United States (the "Government") filed the Indictment, charging Gray with five counts of distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252 (b)(2). (Indictment) [Doc. No. 1 at 1–3]. At the pretrial

motions hearing, the Court received Government Exhibit 1, which included the application for the search warrant executed in this case and its supporting affidavit, into evidence.  (Ex. List) [Doc. No. 28].  Despite the parties' representations on the record at the pretrial motions hearing that no supplemental briefing would be necessary, the Government submitted a supplemental response to Gray's Motion to Suppress Evidence.  (Gov't's Supplemental Resp. to Gray's Mot. to Suppress Evidence "Gov't's Supplemental Mem. in Opp'n") [Doc. No. 30].  Because of the Government's supplemental response, the Court allowed Gray to submit supplemental briefing, which he filed on December 13, 2013.  (Order Dated Dec. 6, 2013) [Doc. No. 31]; (Gray's Supplemental Mem. in Supp.) [Doc. No. 35].

This case is set for trial before United States District Judge David Doty on April 21, 2014.  (Order Dated Dec. 6, 2013) [Doc. No. 34].

## II.    FACTS

On January 9, 2012, Federal Bureau of Investigation ("FBI") Special Agent Robert J. E. Blackmore ("Special Agent Blackmore") downloaded seventeen images and one video depicting child pornography from a peer-to-peer file sharing program from the user "Spuddy297."  (Aff. of Special Agent Blackmore, "Blackmore Aff.," Gov't's Ex. 1 at 19–21).  On January 13, 2012, Special Agent Blackmore again logged onto a peer-to-peer file sharing program and saw that Spuddy297's shared folders contained numerous images depicting child pornography and video files with names suggestive of child pornography.  (*Id.* at 21).  Special Agent Blackmore attempted to download these files, but was unsuccessful.  (*Id.*).  He did, however, capture of number of thumbnail images that depicted child pornography.  (*Id.*).  Less than one week later, an FBI special agent in Phoenix, Arizona connected to a peer-to-peer file sharing program and downloaded seventy image files and one document file from Spuddy297; the majority of the

downloaded files constituted child pornography. (*Id.* at 21–22). On February 23, 2012, an FBI special agent in Brooklyn Center, Minnesota connected to a peer-to-peer file sharing program and downloaded ten image files from Spuddy297's shared folders. (*Id.* at 24–25). Again, the majority of the files depicted child pornography. (*Id.* at 25). On March 6, 2012, Special Agent Blackmore connected to a peer-to-peer file sharing program, observed child pornography in Spuddy297's shared folders, and downloaded four image files, one video file, and one partial video file from Spuddy297. (*Id.* at 25–26).

On each of these occasions, the Internet Protocol address ("IP address") of Spuddy297 was determined to be the same. (*Id.* at 20, 21–24, 26). That address was assigned to an account registered to Brianna Young at an Andover, Minnesota residence. (*Id.* at 20–21, 23). The United States Postal Inspection Office informed Special Agent Blackmore that Brianna Young and Gray received mail at the Andover, Minnesota residence. (*Id.* at 23). Special Agent Blackmore conducted physical surveillance of the residence and identified that one of the cars in the driveway was registered to Gray. (*Id.* at 23–24).

The Anoka County Sheriff's Office told Special Agent Blackmore in May 2012 that the Andover, Minnesota residence was possibly in foreclosure and appeared empty. (*Id.* at 26). On August 3, 2012, Special Agent Blackmore connected to a peer-to-peer file sharing program and downloaded forty-nine image files and two video files from Spuddy297, the majority of which depicted child pornography. (*Id.* at 26–27). Special Agent Blackmore was able to identify the IP address of Spuddy297's computer. (*Id.* at 27). Spuddy297's computer's location had changed; Spuddy297's computer was now identified with an IP address assigned to an account registered to Bruce Young's Forest Lake, Minnesota residence. (*Id.* at 28). On October 20, 2012, Special Agent Blackmore again connected to a peer-to-peer file sharing program, observed numerous

images of child pornography in Spuddy297's shared folders, and unsuccessfully attempted to download files from Spuddy297. (*Id.* at 28–29). Special Agent Blackmore was able to identify the IP address of Spuddy297's computer, which was a different IP address than the one identified on August 3, 2012, but was also registered to Bruce Young's Forest Lake, Minnesota residence. (*Id.* at 29, 31). On October 21, 2012, Special Agent Blackmore connected to a peer-to-peer file sharing program and downloaded two image files depicting child pornography from Spuddy297. (*Id.* at 29). Special Agent Blackmore identified Spuddy297's IP address as the same IP address identified the day before, which was registered to Bruce Young in Forest Lake, Minnesota. (*Id.* at 29, 31). The next day Special Agent Blackmore again connected to a peer-to-peer file sharing program and downloaded twenty image files and three video files from Spuddy297, the majority of which depicted child pornography. (*Id.* at 29–30). Special Agent Blackmore identified Spuddy297's IP address as the same as that identified on October 21. (*Id.* at 30–31).

Special Agent Blackmore was informed by the United States Postal Inspection Service that Gray, Brianna Young, and Bruce Young received mail at Bruce Young's Forest Lake, Minnesota residence. (*Id.* at 31). In addition, Special Agent Blackmore checked the Minnesota Driver and Vehicle Services records and found that the drivers licenses of Gray, Brianna Young, and Bruce Young list the Forest Lake, Minnesota residence as their residence. (*Id.* at 32).

Based upon all of this information, Special Agent Blackmore applied for a search warrant for the Forest Lake, Minnesota residence. (*Id.* at 33). Special Agent Blackmore sought to seize evidence of child pornography including electronic evidence. *See* (Items to Be Seized, Attachment B, Attached to Blackmore Aff.). Magistrate Judge Janie Mayeron signed the search warrant on December 18, 2012. (Search and Seizure Warrant "the Search Warrant," Attached to Blackmore Aff.). The Search Warrant was executed on December 19, 2012, and multiple

electronic storage devices, external hard drives, jump drives, and other devices were seized. *See* (Inventory Listing of All Items Seized by Box Number at Search Warrant Site, Attached to Blackmore Aff.).

## III.   DISCUSSION

Gray now moves for suppression of "any evidence from any search and/or seizure associated with this matter, to include the fruits of any electronic surveillance and the analysis of the same." (Mot. to Suppress Evidence at 1).  Gray argues suppression of evidence is warranted because neither the application nor the supporting affidavit provided sufficient probable cause. (*Id.*); (Gray's Supplemental Mem. in Supp.).[1]  More specifically, Gray argues:

> [A]ny showing of probable cause as of October 2012 that may have been made in the December 18, 2012 Application for a Search Warrant and the supporting Affidavit . . . dissipated and became stale by virtue of the passage of time between October 22, 2012, and issuance of the warrant, almost 60 days later.

(Mot. to Suppress Evidence at 1).

In determining if probable cause exists, a court considers the information that was before the issuing magistrate and affords "great deference to the issuing judge's determination that [the supporting] affidavit established probable cause." *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (internal citations and quotations omitted); *United States v. Carlson*, No. 12-cr-305 (DSD/LIB), 2013 WL 5125434, at *35 (D. Minn. Sept. 12, 2013) (citation omitted).  Where no evidence outside of the affidavit was submitted to the issuing judge, "only that information

---

[1]    Gray also argued in his Motion to Suppress Evidence that the Search Warrant was executed in an unlawful and illegal manner and that any searches, seizures, or electronic surveillance "were conducted without warrant, without probable cause and lacking in any exigent circumstances."  (Mot. to Suppress Evidence at 1–2).  Although Gray raises this argument in his Motion to Suppress Evidence, there is no support for or explanation as to how or why the Search Warrant was executed illegally.  (Mot. to Suppress Evidence).  In addition, Gray does not raise this issue in his supplemental briefing on the Motion.  (Gray's Supplemental Mem. in Supp.).  Thus, Court finds the execution of the Search Warrant is not challenged.

which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Mims*, 567 F. Supp. 2d 1059, 1067 (D. Minn. 2008) (JMR/JSM) (citations omitted).  Probable cause exists when the likelihood of finding evidence of a crime in a certain place is fairly probable. *United States v. Chrobak*, 289 F.3d 1043, 1046 (8th Cir. 2002) (citing *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999)). Moreover, "'[t]he source and credibility of evidence in support of a warrant request is considered in the totality of the circumstances analysis, and a warrant is proper so long as the evidence as a whole creates a reasonable probability that the search will lead to the discovery of evidence.'" *Id.* (quoting *Horn*, 187 F.3d at 786).

### A.      Staleness in Child Pornography Cases Generally

Gray argues that any probable cause that may have resulted from the FBI's lengthy investigation of him dissipated during the passage of time between October 22, 2012, and the Search Warrant's issuance on December 18, 2012.  (Gray's Supplemental Mem. in Supp. at 1). The Government, on the other hand, contends that the less than two months between the downloading by special agents and the application for the Search Warrant did not render the information in the affidavit supporting the Search Warrant stale.  (Gov't's Supplemental Mem. in Opp'n at 5–7).  During that time, the Government explains that Special Agent Blackmore conducted investigation including administrative subpoenas that linked the Forest Lake, Minnesota residence with the downloaded images and videos.  (*Id.*).

"[P]robable cause must exist at the time of the search and not merely at some earlier time." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005) (citations omitted).  Delay "may make probable cause fatally stale," but timing "is not always the controlling factor." *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995).  Because "[t]here is no fixed formula

for determining when information has become stale[,] . . . the timeliness of the information depends on the circumstances of the case . . . ." *Kennedy*, 427 F.3d at 1141 (citations and quotations omitted). Factors to be considered include "the nature of the criminal activity involved and the kind of property subject to the search." *Maxim*, 55 F.3d at 397 (citation and quotations omitted).

The Eighth Circuit recently considered staleness and stated: "[t]his Court, and others, have held that evidence developed within several months of an application for a search warrant for a child pornography collection and related evidence is not stale." *United States v. Estsey*, 595 F.3d 836, 839–40 (8th Cir. 2010) (holding a search warrant executed five months after the discovery of information connecting defendant's home with child pornography did not render the warrant stale); *see also United States v. Freeman*, No. 10-68 (JRT/RLE), 2010 WL 4386897, at *10 (D. Minn. May 13, 2010) *report and recommendation adopted*, 2010 WL 4386894 (listing multiple cases where courts ruled that search warrants that issued on months-old information were not impermissibly stale in child pornography cases).

In support of its statement, the Eighth Circuit identified four cases where courts found information in warrants for child pornography not stale when the information was three to four months old, one year old, six months old, and ten months old. *See Estsey*, 595 F.3d at 840 (citing *Horn*, 187 F.3d at 786–87 (addressing three- or four-month old information); *United States v. Davis*, 313 F. App'x 672, 674 (4th Cir. 2009) (addressing year-old information); *United States v. Hay*, 231 F.3d 630, 636 (9th Cir. 2000) (addressing six-month old information); *United States v. Lacy*, 119 F.3d 742, 745–46 (9th Cir. 1997) (addressing ten-month old information)). In addition, the Eighth Circuit has noted the particular characteristics of child pornography

collectors, including their likelihood to retain their pornography for long periods of time, govern

against staleness arguments for a search warrant for child pornography. *See id.*

Here, the underlying images and videos depicting child pornography were discovered

between January 2012 and October 2012 and Search Warrant was issued on December 18, 2012.

*See* (Blackmore Aff. at 19–31).   There was, thus, an approximately two-month period between

the last discovery of the child pornography in October 2012 and the application for the Search

Warrant in December 2012.   The fact that child pornography collectors often keep and store

pornography for long periods of time and this tendency further supports the finding that the

approximately two-month old information in this case did not render the information used in

applying for the Search Warrant stale. *See Estsey*, 595 F.3d at 840; *see also* (Blackmore Aff. at

13–16) (explaining that persons with a sexual interest in children and child pornographers often

retain their child pornography for long periods of time).

Under applicable Eighth Circuit case law dealing with child pornography cases, the

approximately two-month period before the application for the Search Warrant is consistent with

other time frames that have been held not to be stale. *See Estsey*, 595 F.3d at 840.   Nonetheless,

the Court will look at whether the change in residence involved in this case makes it different

from other child pornography search warrant cases and negates probable cause.

**B.      Change of Residence**

Gray argues that after October 22, 2012, the "investigation essentially went dark"

because the FBI only determined who resided at the Forest Lake, Minnesota residence, identified

who owned the residence, and determined that individuals of interest listed this as the residence

on their drivers' licenses. (Gray's Supplemental Mem. in Supp. at 1–2).   Gray argues that the

fact that this case involves child pornography and that there was only approximately two months

between the information in the supporting affidavit and the issuance of the search warrant is not dispositive on the issue of staleness because the Forest Lake, Minnesota residence was not the residence that was involved in the months of investigation earlier in 2012. (*Id.* at 3). Gray argues that his case is different because it involves a change of residence and much of the information in the affidavit supporting the Search Warrant involves the Andover, Minnesota residence and not the Forest Lake, Minnesota residence that the Search Warrant was issued for on December 18, 2012.[2] (*Id.* at 3–4). Gray argues that although the course of conduct may have resulted from months of investigation it was not months of investigation about the Forest Lake, Minnesota residence that was the subject of the Search Warrant. (*Id.*). Gray argues that the recent change in residence "detracts from the alleged criminality 60 days in the past equates to probable cause as of December 18, 2012." (*Id.*). According to Gray, because there was not a lengthy investigation that involved the Forest Lake residence and Gray argues that "the recent change of residence location detracts from the notion that the alleged criminality 60 days in the past equates to probable cause as of December 18, 2012." (*Id.* at 4). Thus, according to Gray, there was no probable cause. *See* (*id.* at 2–4).

First, the Court finds the information included in Special Agent Blackmore's affidavit contained a detailed description of the investigative process that resulted in the connection between Gray, the downloaded images and videos depicting child pornography, and the Forest Lake, Minnesota residence, which was the result of multiple subpoenas on different IP addresses.

---

[2]     Per the Court's tabulation, based upon the Search Warrant's supporting affidavit, one hundred and eleven image files, two full video files, one partial video file, and one document file were downloaded from Spuddy297 at an IP address assigned to the Andover, Minnesota residence compared to the seventy-two images and five videos downloaded from Spuddy297 at IP addresses assigned to the Forest Lake, Minnesota residence. *See* (Blackmore Aff. at 19–33). The majority of all these downloaded files from IP addresses at both the Andover and Forest Lake Minnesota residences, in addition to other images and thumbnails observed but not successfully downloaded, constituted child pornography. (*Id.*).

*See* (Blackmore Aff. at 19–33).  The supporting affidavit particularly describes the investigation stemming from the downloads on August 3, 2012 and October 20, 21, and 22, 2012 and how these downloads were identified to have come from IP addresses registered to the Forest Lake, Minnesota residence that was the subject of the Search Warrant.  *See* (*id.* at 26–33).  The Court finds that this information was sufficient to provide the issuing magistrate a substantial basis for believing a fair probability existed that evidence of child pornography would be found at the residence, and thus probable cause existed.  *See Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) ("And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.") (internal citations and quotations omitted); *United States v. Needham*, 13-cr-111 (JRT/LIB), 2013 WL 4519414, at *3–4 (D. Minn. Aug. 26, 2013) (finding an affidavit's description of the identification process resulting in the connection of a residence with the downloading of child pornography sufficient when "[t]he affidavit's description of various responses to administrative subpoenas gave the issuing magistrate a substantial basis for making the independent determination that probable cause existed.") (citation omitted).

The Court does recognize that some months of the investigation in early 2012 did not focus on the Forest Lake, Minnesota residence, but rather on a residence in Andover, Minnesota. *See* (Blackmore Aff. at 19–26).  The Court, however, believes that the information contained in the supporting affidavit, as a whole, contained sufficient probable cause for the issuance of the Search Warrant.  First, during the months of investigation, each time child pornography was downloaded, as described in the affidavit the same username "Spuddy297" was used.  *See* (*id.* at 19–33).  Second, Gray was identified as a residing at both the Andover, Minnesota and Forest Lake, Minnesota residences that were assigned IP addresses from which child pornography had

been downloaded by special agents. *See* (*id.* at 23–24, 31–32).  Thus, even though the residences

and IP addresses linked to this user changed during the course of the investigation, the username

was always the same and Gray resided at both residences identified by Special Agent

Blackmore's investigation, which helps to establish probable cause to search the Forest Lake,

Minnesota residence.  *See* (*id.*).   Third, on August 3, October 20, 21, and 22, 2012, child

pornography was downloaded from Spuddy297 that was linked through investigation to the

Forest Lake, Minnesota residence.   *See* (*id.* at 26–33).   Cumulatively, on these occasions,

seventy-two image files and five video files, the majority of which depicted child pornography,

were downloaded from Spuddy297's computer that was identified at IP addresses assigned to the

Forest Lake, Minnesota residence. (*Id.* at 27–32).  Even more images and thumbnails of child

pornography were observed in Spuddy297's shared folders.  (*Id.*).  "[T]he Eighth Circuit has

held that a single image of child pornography can suffice to provide probable cause to search a

suspect's computer." *Needham*, 2013 WL 4519414, at \*9 (citing *United States v. McArthur*, 573

F.3d 608, 613–14 (8th Cir. 2009)).  Even if the months of investigation not associated with the

Forest Lake, Minnesota residence did not help establish probable cause, there were multiple

instances when the downloading of child pornography was linked to the Forest Lake, Minnesota

residence.[3]   In each of these instances, the downloads were linked to IP addresses, through

administrative subpoenas and other investigation, assigned to the Forest Lake, Minnesota

residence that was the subject of the Search Warrant.  Given the totality of this information

---

[3]      Both parties addressed the applicability of the *Leon* good-faith exception in their
submissions to the Court. *See United States v. Leon*, 468 U.S. 897 (1984) (explaining when law
enforcement officers rely reasonably and in good faith upon on properly obtained search warrant
that is later determined invalid the evidence seized as a result of the warrant should not be
suppressed).  Because the Court finds the information in the affidavit supporting the Search
Warrant provides sufficient probable cause for the issuance of the Search Warrant, it does not
address the good-faith exception arguments. *See* (Gov't's Supplemental Mem. in Opp'n 7–8);
(Gray's Supplemental Mem. in Supp. at 6–7).

provided by the supporting affidavit, the Court concludes there was sufficient probable cause for

the issuance of the Search Warrant.

## IV.      RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that Defendant Timothy Kenneth Gray Jr.'s Motion to Suppress

Evidence Derived from Search and Seizure [Doc. No. 17] be **DENIED**.

Dated: Dec. 17, 2013

*s/ Steven E. Rau*

Steven E. Rau

United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **January 6, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.